IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

KIMBERLY MILLER, )
)
    Plaintiff, )
)
v. ) Civil Action No. 3:12CV57–HEH
)
COMMONWEALTH OF VIRGINIA )
DEPARTMENT OF CORRECTIONS, )
)
    Defendant. )

## MEMORANDUM OPINION
(Granting Motion for Summary Judgment)

This case involves the allegedly unlawful termination of Plaintiff Kimberly Miller ("Miller"), formerly a correctional officer employed by Defendant Commonwealth of Virginia Department of Corrections ("VDOC"). Miller alleges that VDOC discriminated against her on account of her gender, because it fired her for allowing an inmate to enter a maintenance utility room, close the door, and remain hidden from view with her for several minutes. She contends that male employees routinely allow inmates to enter that room without recourse. VDOC moves for summary judgment, arguing principally that Miller can produce no evidence of a male comparator who was treated more favorably than her. Additionally, VDOC argues that its legitimate non-discriminatory reasons for Miller's termination are undisputed. Because Miller offers no admissible evidence to

genuinely dispute these material facts, the Court will grant VDOC's Motion for Summary Judgment (ECF No. 31).[1]

## I. BACKGROUND[2]

Miller worked as a VDOC correctional officer from April 2005 until approximately December 2009, assigned to the Sussex I State Prison. (Dep. of Kimberly Miller ("Miller Dep.") at 7:6-8, ECF No. 32-1; Pl.'s Resp. Mot. Summ. J. ("Pl.'s Resp.") Ex. 4, ECF No. 33-1.) On August 19, 2009, after allowing an inmate to enter an isolated maintenance utility room, she asked him to stand in the doorway as she entered. (Miller Dep. at 34:3-14, 41:13-25.) He then closed the door, locking them both in the room and out of sight from other correctional officers for approximately two minutes. (Id. at 34:15-36:25.) She knew that this particular inmate was a convicted murderer. (Id. at 43:1-4.)

---

[1] VDOC incorrectly argues that Miller's opposition to summary judgment was filed late on November 15, 2012. (Def.'s Reply Supp. Mot. Summ. J. ("Def.'s Reply") at 2.) Pursuant to E.D. Va. Loc. R. 7(F)(1), Miller had 11 days to respond to the motion, which was filed on October 30, 2012. That would ordinarily put the deadline on November 10, 2012, but that was a Saturday. Under Fed. R. Civ. P. 6(a)(1)(C), the period to respond continues to run until the next business day. Since Monday, November 12, 2012 was a federal holiday, the deadline would ordinarily fall on November 13, 2012. However, because Fed. R. Civ. P. 6(d) provides for 3 additional days "added after the period would otherwise expire under Rule 6(a)" when a motion is served electronically, as it was here. So, the deadline moved forward to November 16, 2012. See, e.g., Francisco v. Verizon South, Inc., 272 F.R.D. 436, 440 n.3 (E.D. Va. 2011) (citing the 2005 Amendments to Fed. R. Civ. P. 6(e), the predecessor to Rule 6(d)).

[2] As required by E.D. Va. Loc. R. 56(B), and consistent with Fed. R. Civ. P. 56(c)(1), VDOC has listed the undisputed material facts with citation to particular parts of the record. Miller has not specifically challenged any of VDOC's enumerated assertions of undisputed fact, so those facts are accepted as true. Instead, she argues only that certain favorable inferences ought to be drawn from those facts. As appropriate, the Court draws "all justifiable inferences" in her favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Miller had previously been observed holding this inmate's arm as they walked across the lobby floor in full view of the entire inmate work crew. (*Id.* at 59:1-23.)

As a VDOC employee, Miller knew that she was subject to a number of policies forbidding both "fraternization" and the "appearance of improprieties" with inmates. (*Id.* at 14:2-18:21.) She acknowledges that such policies are designed in part to protect correctional officers. (*Id.* at 18:1-22.) Applying these policies to the August 19, 2009 incident, Warden Loretta Kelly ("Warden Kelly") recommended the issuance of a "Group III Written Notice," ultimately leading to Miller's termination.[3] (Decl. of Loretta Kelly ("Kelly Decl.") at ¶¶ 4-5, Ex. A.) In addition to the August 19th incident, the memorandum attached to the "Group III Written Notice" cited "suspicion from the Watch Commander and other staff that suggested that Officer Miller was overly friendly with the offender." (*Id.* Ex. A.)

Warden Kelly is aware of no instance in which any male correctional officer engaged in the same misconduct as Miller and was not terminated. (Kelly Decl. at ¶ 6.) Likewise, Miller is unable to identify any male employee who was treated more favorable to her under like circumstances. (Miller Dep. at 63:4-64:7.)

After her termination, Miller filed a charge against VDOC with the Equal Employment Opportunity Commission ("EEOC"), alleging sex discrimination. (Am.

---

[3] In support of its Motion for Summary Judgment, VDOC also references time and attendance issues for which Miller was previously counseled. (Miller Dep. Ex. 6.) The "Group III Written Notice" that led to her termination does not cite these as reasons for termination. Accordingly, the Court construes VDOC's legitimate, non-discriminatory reason for termination as the "act of, or giving the appearance of fraternization with an offender"—the reason given in the "Group III Written Notice." (Kelly Decl. Ex. A.)

3

Compl. at ¶ 45, ECF No. 22.) As a result, she was issued a "Right to Sue" letter on October 24, 2011, and timely filed this lawsuit. (*Id.* at ¶ 46.) Previously, Miller asserted claims for sex discrimination (Count I) and breach of contract (Count II), but the Court dismissed the breach of contract claim, leaving in dispute only the allegations of sex discrimination. (Mem. Order, Oct. 15, 2012, ECF No. 30.) VDOC now moves for summary judgment.[4]

## II. STANDARD OF REVIEW

Summary judgment is appropriate where the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A "genuine issue of material fact" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Thus, the court must view the record in the light most favorable to the nonmoving party, and must draw all reasonable inferences in its favor. *See Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002). However, "the mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient." *Anderson*, 477 U.S. at 252; *see also Othentec Ltd. v. Phelan*, 526 F.3d 135, 140 (4th Cir. 2008). Accordingly, to deny a motion for summary judgment, "[t]he disputed facts must be material to an issue

---

[4] The parties also discuss at length Miller's grievance with the Virginia Department of Employment Dispute Resolution, in which she administratively challenged the decision to terminate her employment. (Pl.'s Resp. Ex. 4.) After a hearing and full review of the evidence, the Hearing Officer upheld VDOC's decision to terminate her, finding that Miller had "created the appearance of fraternization" with the subject inmate. (*Id.*) Neither party explains how, or to what extent, these proceedings bear on the issues now before the Court.

necessary for the proper resolution of the case, and the quality and quantity of the evidence offered to create a question of fact must be adequate to support a jury verdict." *Thompson v. Everett, Inc. v. Nat'l Cable Adver., LP*, 57 F.3d 1317, 1323 (4th Cir. 1995).

## III. DISCUSSION

VDOC identifies three weaknesses in Miller's case that it argues should result in summary judgment. Chiefly, it argues that Miller's failure to identify a male comparator dooms her discrimination claim—without such evidence, it argues that she cannot establish a *prima facie* case. Second, VDOC argues that its legitimate, nondiscriminatory reasons for discharging Miller have not been refuted. Lastly, it argues that the allegations of sex discrimination are unfounded where, as here, the decision-maker (i.e. Warden Kelly) is also female. These arguments are addressed in turn.

### A. Lack of Comparator Evidence

Miller's discrimination claim relies on a theory that she was disciplined for conduct for which male correctional officers are not disciplined—bringing an inmate into the utility room. In defining the scope of her misconduct in this way, Miller attempts to broaden the universe of prospective comparators in a manner not reflective of the situation here. Two additional facts distinguish Miller's situation from her definition of comparator. First, Miller did not simply allow an inmate into the utility room—she allowed herself to be hidden in that room behind closed doors for two minutes. (Miller Dep. at 34:15-36:25.) Second, as specifically noted when she was terminated, there was already "suspicion . . . that [she] was overly friendly with the offender." (Kelly Decl. Ex.

5

A.) These suspicions are consistent with Miller's admission that she was seen arm-in-arm with the inmate on a previous occasion. (Miller Dep. at 59:1-23.)

To support a disparate treatment claim based on discriminatory disciplinary action, Miller must show that she: (1) engaged in prohibited conduct similar to that of a person of the opposite sex, and (2) that disciplinary measures enforced against her were more severe than those enforced against that person of the opposite sex. *Lightner v. City of Wilmington*, 545 F.3d 260, 264-65 (4th Cir. 2008) (citing *Moore v. City of Charlotte*, 754 F.2d 1100, 1105-06 (4th Cir. 1985)). In presenting such "comparator" evidence, "[t]he similarity between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful." *Id.* at 265 (citing *Moore*, 754 F.2d at 1106-10).

The lack of a meaningful comparator is the fatal flaw in Miller's case. While she posits generally that men bring inmates into the utility closet without recourse, she has identified no male correctional officer who did so under comparable circumstances.[5] Assuming, for the sake of argument, that male correctional officers frequently bring inmates into the utility closet but are not punished, such comparators would not be similar in "the seriousness of their respective offenses." *Id.* An adequate comparator must also present circumstances giving rise to an appearance of impropriety, as that was a

---

[5] Even then, some of the general evidence that Miller cites is inadmissible hearsay that cannot be considered in resolving a motion for summary judgment. Fed. R. Civ. P. 56(c)(2). For example, she references the testimony of Rhonda Langford, a secretary in her unit, who testified at the administrative hearing that "[t]he boys are in and out of there all day." (Pl.'s Resp. Mot. Summ. J. at 2.) VDOC has correctly objected to the consideration of such hearsay. (Def.'s Reply at 3.)

chief reason for Miller's termination. (Kelly Decl. Ex. A; Miller Dep. at 14:2-18:21.) Without such evidence, Miller fails to establish a *prima facie* case.[6]

B. **Legitimate Nondiscriminatory Reasons for Termination**

Had Miller established a *prima facie* case of discrimination—which she has not—she still could not rebut VDOC's legitimate, nondiscriminatory reason for termination. Once a *prima facie* case of discrimination is established, the employer may offer a legitimate, nondiscriminatory explanation for its employment decision. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *Tex. Dep't Cmty. Affairs v. Burdline*, 450 U.S. 248, 253 (1981)). This has the effect of shifting the burden back to the employee to prove, "by a preponderance of the evidence," that the explanation is a mere pretext designed to disguise the discrimination. *Id.*

As Miller has acknowledged, the appearance of improprieties with inmates could "compromise security or undermine the effectiveness to carry out the employee's responsibilities," for which her employment could be terminated. (Miller Dep. at 18:8-21.) Miller was especially aware of a potential danger here, since she knew that this particular inmate was a convicted murderer. (*Id.* at 43:1-4.) Under these circumstances,

---

[6] Miller's reference to the findings of the EEOC is also unavailing. While a Court may consider an EEOC determination, "[p]rior administrative findings, whatever result may be reached, are ordinarily not entitled to preclusive effect in a subsequent discrimination suit . . ." *Rosenfeld v. Dep't of Army*, 769 F.2d 237, 239 (4th Cir. 1985). The EEOC did not address the level of similarity between the conduct of male correctional officers versus that of Miller, as the Fourth Circuit has instructed. *Lightner*, 545 F.3d at 264-65 (citation omitted). Thus, its decision does not substitute for the requisite comparator evidence.

Miller does not dispute that enforcement of such a policy is a legitimate, nondiscriminatory reason for termination.

Miller offers only speculation—not evidence—that the justification for termination was pretext. She refers to VDOC's failure to offer evidence of pretext during an administrative claim that she brought before the Virginia Department of Employment Dispute Resolution. Regardless of what transpired in that proceeding, Miller has not offered any evidence of pretext in this forum. On this additional basis, dispositive relief is warranted.

### C. The Decision-Maker is also a Member of the Protected Class

Given the Court's findings concerning Miller's case-in-chief, it is unnecessary to address VDOC's argument that Warden Kelly, as a woman, is unlikely to discriminate against Miller on the basis of her sex. Alone, this fact is not necessarily dispositive, though it could carry some persuasive force. *See, e.g., Taylor v. CAN Corp.*, 782 F. Supp. 2d 182, 198 (E.D. Va. 2010) (citing *Coggins v. Gov't of D.C.*, 1999 U.S. App. LEXIS 2603, at *11 (4th Cir. Feb. 19, 1999); *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1471 (11th Cir. 1991)) ("[A]n allegation of discrimination loses persuasiveness when a key player in the disciplinary process falls within the same protected class as the plaintiff."). At the summary judgment stage, it is not clear that dispositive relief would be warranted on this basis alone. Accordingly, the Court refrains from drawing a broad conclusion that a female warden could never commit sex discrimination against a female corrections officer, simply because they are of the same gender.

## IV. CONCLUSION

In a nutshell, Miller's case fails because she has offered no evidence of a similarly situated comparator who was not disciplined for similar misconduct. Had she offered such evidence, her case would still fail because there is not evidence that her termination for violating VDOC policies was a pretext. Accordingly, VDOC's Motion for Summary Judgment will be granted.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Dated: Dec 3, 2012
Richmond, Virginia